**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,** ) | |
| **a national banking association,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 09-0784-KD-B** |
| ) | |
| **BANKPLUS, a Mississippi Bank,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This action is before the Court on the motion for summary judgment filed by plaintiff

U.S. Bank National Association (US Bank), the response filed by defendant BankPlus, and US

Bank's reply (docs. 29, 30, 35, 42).  Upon consideration, and for the reasons set forth herein,

U.S. Bank's motion for summary judgment is **GRANTED.**[1]

I. Background

On May 10, 2005, Charles Steven Wood, Sr., and Alecia P. Wood entered into a purchase

and escrow agreement to buy condominium Unit C-1807 at Turquoise Place, Phase II at Orange

Beach, Alabama, for approximately $1.4 million.  (doc. 26, Exhibit A, Declaration of George

Gordon, City President for BankPlus, and exhibits).  At that time an irrevocable Letter of Credit

(LOC) in the amount of $277,180.00 was issued by BankPlus at the request of the Woods for use

as an earnest money deposit (Id.)  The LOC named US Bank, the escrow agent for Turquoise

Place, as the "Beneficiary", identified the Woods as the "Borrower", and BankPlus as the

"Lender" (Id.) On November 1, 2008, the Woods obtained a replacement irrevocable LOC which

---

[1] The parties' joint motion to hold in abeyance the requirements of the preliminary
scheduling order (doc. 28) is **MOOT**.

by its terms would expire November 1, 2009[2] (Id.; doc. 1-1, p. 2-3).

      As part of the Application and Agreement for Irrevocable Letter of Credit, the Woods agreed to repay BankPlus and executed a promissory note in the amount of $277,189.00 whereby payment by BankPlus on Sight Draft on the LOC would be an advance under the note (doc. 26, Exhibit A, at ¶ 9).  The Woods also executed a deed of trust which granted BankPlus a mortgage on their property in Waynesboro, Mississippi (Id. at ¶ 10).  On September 16, 2009, the Woods filed a voluntary Chapter 13 bankruptcy petition and proposed Chapter 13 Plan in the U.S. Bankruptcy Court for the Southern District of Mississippi, Southern Division (Case No. 09-52037-NPO).

      On October 27, 2009, US Bank presented a Sight Draft to BankPlus in the amount of $207,885.00 and Statement of Beneficiary indicating that the Woods defaulted on the terms of the purchase and escrow agreement with Turquoise (doc. 1-2, p. 2-3).  Instead of paying US Bank, BankPlus initiated an Adversary Proceeding in the bankruptcy action on October 30, 2009, against the Woods, U.S. Bank, and the Chapter 13 Trustee J. C. Bell, to determine the status of the LOC and the parties' respective underlying agreements (Adversary Proceeding Case No. 09-05078-NPO).  On December 2, 2009, US Bank filed a motion to dismiss the Adversary Proceeding which was granted (Id. at document 38).

      Also on December 2, 2009, US Bank filed its complaint against BankPlus in this court wherein US Bank alleges that BankPlus wrongfully dishonored US Bank's demand for payment under the terms of the LOC (doc. 1).  US Bank brings its First Cause of Action for breach of

---

    [2] The LOC calls for application of Mississippi law to the extent not preempted by federal law.  The parties do not dispute that the law of Mississippi is applicable.

contract, its Second Cause of Action for violation of International Standby Practices, and its

Third Cause of Action for violation of Uniform Commercial Code (Id.).  BankPlus answered and

set forth its affirmative defenses to the complaint (doc. 23).  As of the filing of the motion for

summary judgment, the Sight Draft had not been honored (see doc. 14-1, Affidavit of David W.

Morrison, Vice President of US Bank).

      II.  Standard of Review

      Summary judgment should be granted only if "there is no genuine issue as to any

material

fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The

party seeking summary judgment bears "the initial burden to show the district court, by reference

to materials on file, that there are no genuine issues of material fact that should be decided at

trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking

summary judgment always bears the "initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing

on an essential element of her case with respect to which she has the burden of proof," the

moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether

the nonmoving party has met its burden, the court must stop short of weighing the evidence and

making credibility determinations of the truth of the matter.  Instead, the evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton

v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911

(1993) (internal citations and quotations omitted).  The mere existence of any factual dispute will

not automatically necessitate denial of a motion for summary judgment; rather, only factual

disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of the Dep't of

Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

III. Statement of the law

The parties do not dispute that the LOC was issued in the State of Mississippi.  Further,

there is no dispute that the LOC is governed by the Uniform Commercial Practices of the

International Chamber of Commerce (UCP), ICC Publication No. 600, and by the laws of the

State of Mississippi, to the extent not preempted by federal law or inconsistent with the UCP, as

incorporated into the LOC (doc. 1-1, p. 2).  Revised Article 5 of the Mississippi Uniform

Commercial Code addresses letters of credit. Miss. Code Ann. § 75-5-101 *et seq*.

In general, a LOC is a

. . .  payment device often used in international trade which permits a buyer in a
transaction to substitute its financial integrity with that of a stable credit source,
usually a bank. Alaska Textile Co., Inc. v. Chase Manhattan Bank, N.A., 982 F.2d
813, 815 (2d Cir. 1992). As described by the Second Circuit:

In its classic form, the letter of credit is only one of three distinct
relationships between three different parties: (1) the underlying
contract for the purchase and sale of goods between the buyer
("account party") and the seller ("beneficiary"), with payment to
be made through a letter of credit to be issued by the buyer's bank
in favor of the seller; (2) the application agreement between the
[issuing] bank and the buyer, describing the terms the issuer must
incorporate into the credit and establishing how the bank is to be
reimbursed when it pays the seller under the letter of credit; and
(3) the actual letter of credit which is the bank's irrevocable
promise to pay the seller-beneficiary when the latter presents
certain documents (e.g., documents of title, transport and insurance
documents, and commercial invoices) that conform with the terms

4

of the credit.

Id.
. . .

The key to the commercial vitality of the letter of credit is its independence: it is
wholly separate and distinct from the underlying contract. When the beneficiary
submits documents to the issuing/confirming bank, the bank's only duty is to
examine the documents and determine whether they are in accordance with the
terms and conditions of the credit. Dibrell Bros. Int'l, S.A. v. Banca Nazionale
Del Lavoro, 38 F.3d 1571, 1579 (11th Cir. 1994).  If the bank finds the
documents to be conforming, it is then obligated to honor a draft on the credit,
independent of the performance of the underlying contract for which the credit
was issued. Marino Indus. Corp. v. Chase Manhattan Bank, N.A., 686 F.2d 112,
115 (2d Cir. 1982) ("It is the complete separation between the underlying
commercial transaction and the letter of credit that gives the letter its utility in
financing transactions."); Pro-Fab, Inc. v. Vipa, Inc., 772 F.2d 847, 852-53 (11th
Cir. 1985) ("The bank is obligated to look only to the requirements of the letter of
credit, not to any other activity between the parties.")

The Uniform Customs and Practices for Documentary Credits (UCP), first issued
in 1930 by the International Chamber of Commerce and revised approximately
every ten years since, is a compilation of internationally accepted commercial
practices which may be incorporated into the private law of a contract between
parties. Alaska Textile, 982 F.2d at 816. Although it is not the law, the UCP
applies to most letters of credit because issuers typically incorporate it into their
credits. Id.

Banco General Runinahui, S.A. v. Citibank Intern., 97 F.3d 480, 482 (11th Cir. 1996).

The "independence principal" has been codified in Mississippi law and explained as

follows:

. . . A letter of credit is an engagement by an issuer, usually a bank, made at the
request of a customer (or applicant) for a fee, to honor a beneficiary's drafts or
other demands for payment upon satisfaction of the conditions set forth in the
letter of credit. Miss. Code Ann. § 75-5-102.  At common law, the issuer of a
letter of credit had a direct obligation to pay independent of the underlying
contract between the customer and the beneficiary as long as the documents
presented satisfied the terms of the letter of credit. See, e.g., Pringle-Associated
Mortgage Corp. v. S. Nat'l Bank, 571 F.2d 871, 874 (5th Cir.1978).  This feature
of a letter of credit is known as the "independence principle" and has been
described as the "most unique and mysterious part of the letter of credit

5

transaction." 3 James J. White & Robert S. Summers, Uniform Commercial Code § 26-2 (5th ed.2007).  In Mississippi, the independence principle is codified in Miss. Code Ann. § 75-5-103(d), which states:

> Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

Id.

In re B.C. Rogers Poultry, Inc., 2009 WL 3856428, *8, (Bankr. S.D. Miss. November 16, 2009) (footnotes omitted).

In order to prevail on a claim that the issuer has wrongfully dishonored a request for payment pursuant to a LOC, the beneficiary must show the issuance of a LOC, timely presentation of the document required in the LOC to effectuate a demand for payment, and a failure to pay on the part of the issuer.  Voest-Alpine Trading USA Corp. v. Bank of China, 142 F.3d 887, 892 (5th Cir. 1998).

IV. Analysis

A. Wrongful dishonor[3]

On motion for summary judgment, US Bank argues that on October 27, 2009, it timely presented the Sight Draft and Statement of Beneficiary to BankPlus for payment of a  partial draw of  $207,885.00.  US Bank states that BankPlus then had seven days to honor the presentation, or until November 3, 2009, two days after the LOC was set to expire on November

---

[3] US Bank claims breach of contract, violation of International Standby Practices, and violation of Uniform Commercial Code.  However, all counts rest upon a finding of whether BankPlus wrongfully dishonored the draft on the LOC.

6

1, 2009. US Bank argues that BankPlus acknowledged receipt but has not yet paid, and therefore, wrongfully dishonored its request for payment.  US Bank argues that the LOC is independent of the underlying contracts between the Woods and Turquoise or BankPlus and the Woods, and therefore filing the Adversary Proceeding in the Woods' bankruptcy action does not excuse BankPlus from the wrongful dishonor.

BankPlus responds that it did not honor the Sight Draft because of the Woods' pending bankruptcy.  BankPlus argues that it initiated the Adversary Proceeding to interplead the funds because it was faced with conflicting and competing claims regarding the validity of the LOC and entitlement to payment or retention of the proceeds.  BankPlus argues that the competing claims could subject it to inconsistent adjudications leading to double or multiple liability. BankPlus concedes that the Bankruptcy Court has dismissed its Adversary Proceeding, and therefore, the primary reasons for initiating the Adversary Proceeding instead of paying the Sight Draft, no longer exist.

BankPlus does not dispute that the LOC was properly issued, that the presentation of the Sight Draft and Statement of Beneficiary complied with the terms of the LOC, or the timeliness of the presentation.  The LOC explained that Sight Drafts were to be marked "DRAWN UNDER BankPlus IRREVOCABLE LETTER OF CREDIT NO. 150005558000 DATED 11-1-2008", that "the amount of each draft shall be marked on the draft", that only the Beneficiary could make a draw, that the original LOC must accompany the draw, and that partial draws were permitted (doc. 1-1).  The Sight Draft was presented on October 27, 2009 and the LOC did not expire until November 1, 2009.  BankPlus does not dispute that it has not paid US Bank.  Thus US Bank has met its burden of establishing the elements of a claim for wrongful dishonor.

Voest-Alpine Trading USA Corp., 142 F.3d at 892.

BankPlus argues that it did not pay because it filed an Adversary Proceeding in the Woods Bankruptcy proceeding and sought to interplead the funds into bankruptcy.  However, the Fifth Circuit Court of Appeals has held that "[i]t is well-established in this circuit that letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate." In re Stonebridge Technologies, Inc., 430 F. 3d 260, 269 (5th Cir. 2005).  "Insofar as letters of credit embody obligations between the issuer and beneficiary, such contractual rights and duties are entirely separate from the debtor's estate:

> [A]n issuer's obligation to the letter of credit's beneficiary is independent from
> any obligation between the beneficiary and the issuer's customer. All a
> beneficiary has to do to receive payment under a letter of credit is to show that it
> has performed all the duties required by the letter of credit.

Id. (quoting Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.), 831 F.2d 586, 590 (5th Cir. 1987)).  Also, the Eleventh Circuit Court of Appeals, in In re Air Conditioning, Inc. of Stuart, 845 F. 2d 293 (11th Cir. 1988), found that neither a LOC nor its proceeds were property of the debtor's estate. Id. at 2906; cf. In re Builders Transport, Inc., 471 F.3d 1178 (11th Cir. 2006), cert. denied, 550 U.S. 904, 127 S. Ct. 2112 (2007) (explaining that the doctrine of independence protects only the "distribution" of proceeds of a LOC and not the right to retain those proceeds once received).

No genuine issue of material fact exists such that would preclude entry of summary judgment in favor of US Bank on the claim for wrongful dishonor.  Further, as a matter of law BankPlus's decision to file the Adversary Proceeding instead of paying on the Sight Draft is not a valid defense to US Bank's claim for wrongful dishonor.  Accordingly,  summary judgment is granted in favor of US Bank as to all claims.

8

B. <u>Damages</u>

The Sight Draft indicates that US Bank sought a partial draw of $207,885.00.  US Bank also seeks pre-judgment interest accruing at the rate of 8%, <u>see</u> Miss. Code Ann. § 75-17-1, from time of dishonor until judgment, or the amount of $16,630.80.  BankPlus does not dispute the interest accrual calculation or the principle amount of damages provided by plaintiff US Bank. Accordingly, US Bank is awarded damages in the sum of $207,885.00 plus $6,834.00, interest accrued thereon at the rate of 8 % or $45.56 *per diem*[4] , for a total of $214,719.00.

C. <u>Attorney fees and costs</u>

US Bank also states that it will present finals costs and attorney fees after the order on summary judgment "and before final judgment consistent with local rules and practice".  At the time of summary judgment, US Bank sought attorney fees of $12,797.00 and costs of $350.00, for a total of $13,147.00.  US Bank argues that Miss. Code Ann. § 75-5-111(e) as well as UCC Article 5-111(e) provide for attorneys fees and other expenses to the prevailing party.

BankPlus argues that should this Court find it wrongfully dishonored the Sight Draft and that US Bank is the prevailing party, US Bank is only entitled to reasonable fees and expenses incurred directly in connection with this action only and not with the bankruptcy action. BankPlus also argues that US Bank has not met its burden because it has not submitted time sheets or other evidence, and if the Court allows US Bank to submit evidence, BankPlus reserves the right to respond.

---

[4] US Bank determined the daily accruing rate of interest by determining the annual interest rate on the principal and dividing that sum by 365 days per year (doc. 14, p.11).  From November 3, 2009, the date of dishonor until judgment, April 2, 2010, constitutes 150 days. 150 days multiplied by $45.56 totals $6,834.00.

9

Section 75-5-111(e) provides that "[r]easonable attorney's fees and other expenses of litigation must be awarded to the prevailing party in an action in which a remedy is sought under this chapter." Miss. Code Ann. § 75-5-111(e).  US Bank brought its Third Cause of Action for violation of the Uniform Commercial Code (doc. 1).  Therefore, summary judgment having been granted in favor of US Bank as to all claims, the Court finds that US Bank is the prevailing party in this action.

Accordingly, the Court will retain jurisdiction to address the issue of a reasonable attorneys fee and other expenses.  See Fed. R. Civ. P. Rule 54(d); Standing Order No. 13 and Local Rule 54.1 and 54.3, Southern District of Alabama.  Therefore, US Bank shall files it application for attorneys fees and expenses, with evidentiary support, on or before **April 19, 2010**, and BankPlus shall file its response on or before **May 3, 2010**.  The application and response shall be taken under submission on **May 4, 2010.**

V.  Conclusion

For the reasons set forth herein, summary judgment is granted in favor of plaintiff U.S. Bank as to all claims.  Judgment consistent with the terms of this order shall be entered by separate document as required in Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this April 2, 2010.


 **s / Kristi K DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**